UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMERICAN FITNESS, INC., BAHAMA MAMA,
LLC, and BRIAN ANDRULEWICH,

                        Plaintiffs,

vs.

STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and BASIL SEGGOS, as
Commissioner of the New York State Department of
Environmental Conservation,

                        Defendants.

**JURY TRIAL DEMANDED**

**COMPLAINT**

**Civil Action No.:**

**3:23-cv-108 (TJM/ML)**

American Fitness Inc., Bahama Mama LLC, and Brian Andrulewich, by and through their attorneys, Richard C. Lewis, Esq. and Richard H. Miller III, Esq. of Hinman, Howard & Kattell, LLP, as and for their Complaint against Defendants the State of New York, The New York State Department of Environmental Conservation, and Basil Seggos as Commissioner of the New York State Department of Environmental Conservation, alleges the following:

## NATURE OF CLAIM

1.     This is a civil action seeking a declaratory judgment as to the applicability of a Consent Decree rendered in *State of New York v. CG Properties, LLC et al.*, 1:11-CV-1077-TJM/RFT, ECF No. 26 (N.D.N.Y. Sept. 20, 2012).

## PARTIES

2.     Plaintiff American Fitness, Inc. is a domestic business corporation incorporated in New York State under section 402 of the Business Corporation Law, which principal executive

1

office is located at 1808 Vestal Parkway East, Vestal, NY 13850. Plaintiff's Chief Executive Officer is Co-Plaintiff, Brian Andrulewich.

3.     Plaintiff Bahama Mama, LLC is a limited liability company registered in New York State under section 203 of the Limited Liability Company Law, which principal place of business is located at 1808 Vestal Parkway East, Vestal, NY 13850. Plaintiff's sole member and agent for service of process is Co-Plaintiff, Brian Andrulewich.

4.     Upon information and belief, Defendants the State of New York and the New York State Department of Environmental Conservation ("DEC") are governmental organizations under the laws of the State of New York with a principal office located at 625 Broadway Albany, NY 12233-1500.

5.     Upon information and belief, Defendant DEC Commissioner Basil Seggos, is a New York State governmental employee whose principal office is located at 625 Broadway Albany, NY 12233-1010.

## JURISDICTION

6.     Subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1331 as this Complaint raises questions of federal law.

7.     Personal jurisdiction is proper in this Court as Defendants have a principal place of business within the District at 625 Broadway, Albany, NY 12233. *See* Fed. R. Civ. P. § 4; N.Y. C.P.L.R. § 307.

8.     Plaintiffs seek a declaratory judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-02.

## VENUE

9.      Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b)(1) as Defendants have a place of business within the District.

10.      Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred within the District, and a substantial part of property that is the subject of the action is situated within the District.

## FACTS COMMON TO ALL CLAIMS

11.      Plaintiffs repeat and reallege paragraphs 1-10 as if fully set forth herein.

12.      Plaintiff Bahama Mama, LLC purchased 1808 Vestal Parkway, Vestal, NY 13850 ("1808 Vestal") on or about June 2013.

13.      Bahama Mama purchased 1808 Vestal from CG Properties, LLC and Allen Green, the prior owners of the property.

14.      Plaintiff Andrulewich had been a long-term tenant of 1808 Vestal, leasing the property through Co-Plaintiff American Fitness, Inc., prior to the June 2013 purchase of the property.

15.      While CG Properties, LLC and Mr. Green owned 1808 Vestal, it was designated as a Hazardous Waste Site by the DEC. *See Exhibit A*, July 12, 2002 Letter.

16.      1808 Vestal had previously been owned by Hidden Valley Electronics, Inc.

17.      The DEC alleged that 1808 Vestal contained the presence of hazardous waste.

18.      1808 Vestal was subjected to a Remedial Investigation and Feasibility Study by the DEC spanning from approximately May 2004 through December 2007.

19.      The DEC knew or should have known of Plaintiffs' interest as a long-term tenant and potential buyer of 1808 Vestal.

3

20.     On January 27, 2005, P. David Smith, Bureau Director for the Division of Environmental Remediation, sent a letter to Plaintiffs' counsel Richard C. Lewis, in response to a letter sent by attorney Lewis on December 20, 2004 voicing concerns about site testing at 1808 Vestal. *See Exhibit B*, January 27, 2005 Letter.

21.     A March 29, 2006 letter from Dolores A. Tuohy, associate attorney for the DEC, to Plaintiff Andrulewich confirmed the DEC's "understanding . . . that you are in negotiations regarding your possible purchased of C.G. Properties, LLC, the corporation which owns the Site." *See Exhibit C*, March 29, 2006 Letter.

22.     On or about March 2008, the DEC issued a Record of Decision for 1808 Vestal, including information about the site location, contamination, remediation goals and procedures, and an evaluation of alternative remediation measures.

23.     The DEC issued this Record of Decision pursuant to N.Y. Envtl. Conserv. Law §§ 27-1301-23 and N.Y. Comp. Codes R. & Regs. tit. 6, § 375-1.5.

24.     The Record of Decision called for a number of remedial measures to address the contamination, including instillation of a groundwater extraction and treatment system, soil vapor testing, and indoor air cleaning, among others.

25.     In the DEC's analysis, it required the selected remedial remedy to "utilize permanent solutions" to protect human health and the environment. *See Exhibit D*, Record of Decision, at 17.

26.     In the DEC's analysis of alternative remedial measures, the DEC used present dollar figures to represent "the amount of money invested in the current year that would be **sufficient to cover all present and future costs** associated with the alternative." *Ex. D* at 17 (emphasis added)

27.     Upon information and belief, following the March 2008 Record of Decision, CG Properties, LLC, Mr. Green, and the DEC were unable to reach an agreement regarding remedial measures for 1808 Vestal.

28.     In 2011 the DEC commenced an action against CG Properties, LLC and Mr. Green, case caption *STATE OF NEW YORK, THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, and JOSEPH MARTENS, as Commissioner of the New York State Department of Environmental Conservation v. CG PROPERTIES, LLC, ALLEN J. GREEN, and HIDDEN VALLEY ELECTRONICS, INC.*, Case No. 1:11-cv-01077-TJM-RFT (N.D.N.Y. 2011) (the "Lawsuit"). ***See Exhibit E***, Consent Decree.

29.     Defendants filed the Lawsuit pursuant to "Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, et seq., and the State common law of public nuisance and restitution." ***Ex. E*** at 1.

30.     Defendants sought to recover costs incurred and "to be incurred" by New York State in rehabilitation costs related to hazardous materials at 1808 Vestal. ***Ex. E*** at 1.

31.     On September 20, 2012, Defendants, CG Properties, and Allen Green entered into a Consent Decree, to settle Defendants' claims regarding 1808 Vestal and "avoid prolonged and complicated litigation between the parties." ***Ex. E*** at 2-3.

32.     Defendants agreed that the court had subject matter jurisdiction over the Consent Decree "pursuant to Section 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. § 1331." ***Ex. E*** at 3.

33.     Defendants agreed and consented to the "Court's jurisdiction to enter and enforce this Consent Decree." ***Ex. E*** at 3.

34.     The Consent Decree "is binding upon the State, and upon Defendants [CG Properties, Allen Green, and Hidden Valley Electronics] and **their heirs, successors and assigns.**" *Ex. E* at 3 (emphasis added).

35.     Under the Consent Decree, "**[a]ny change in ownership** or corporate or other legal status, including, but not limited to, **any transfer of** assets or **real** or personal **property**, shall **in no way alter the status** or responsibilities **of Defendants** [CG Properties, Allen Green, and Hidden Valley Electronics] under this Consent Decree." *Ex. E* at 3 (emphasis added).

36.     The objectives of the Consent Decree were plainly stated: "(i) for Defendants [CG Properties, Allen Green, and Hidden Valley Electronics] to make a cash payment to the State in **settlement of the claims for past and future response costs** as set forth in the Amended Complaint, (ii) to grant the State access to the Site as needed and as may be needed for it to implement the remedial measures selected in the March 2008 ROD [Record of Decision] and to operate and maintain the remedial measures as set forth in the Site Management Plan (Appendix D), (iii) to ensure the continued efficacy of these remedial measures in protecting human health and the environment through the recordation of an appropriate Environmental Easement, and (iv) to otherwise **settle and resolve all of the State's claims against the Defendants** under the terms and provisions set forth in Section VII (Covenant Not to Sue by the State) and Section X (Reservation of Rights by the State)." *Ex. E* at 3-4 (emphasis added).

37.     Also part of the Consent Decree, "Defendant CG Properties, or **its successors and assigns**" agreed to provide the DEC with access to 1808 Vestal to conduct site-related activities, and refrain from using 1808 Vestal in a manner that would adversely affect "the implementation, integrity or protectiveness of the remedial measures." *Ex. E* at 4-5 (emphasis added).

38.     Another requirement of the Consent Decree, "CG Properties shall inform in writing any **third party that obtains title** to or a possessory interest in the Site of the **existence and applicability to the Site of this Consent Decree** including the Environmental Easement." *Ex. E* at 6 (emphasis added).

39.     A further requirement of the Consent Decree is that "Defendant CG Properties or **its successors and assigns**" shall be responsible for ensuring compliance with the Site Management Plan, including future construction work. *Ex. E* at 13 (emphasis added).

40.     The Consent Decree stated numerous times that it applied not only to CG Properties, but also its "successors and assigns."

41.     CG Properties, LLC and Allen Green agreed to pay the DEC $850,000.00 for present and future costs of remediation of the environmental measures required by the State for 1808 Vestal.

42.     Upon information and belief, $850,000.00 was paid to the DEC, in settlement of all present and future claims regarding hazardous materials at 1808 Vestal. *Ex. E* at 4.

43.     This amount was interpreted as the amount that would settle any and all future costs by successors and assigns related to the hazardous materials.

44.     A significant portion of the funding for this $850,000.00 settlement amount came from Mr. Andrulewich's purchase of 1808 Vestal, which purchase was known by all parties to the prior litigation.

45.     With execution of the Consent Decree, the State agreed to dismiss with prejudice its claims asserted against CG Properties, LLC and Allen Green as owners of 1808 Vestal, as set forth in the Consent Decree, as well as against their heirs, successors, and assigns. *Ex. E* at 15.

46.     The Consent Decree was the final judgment, pursuant to Fed. R. Civ. P. §§ 54 and 58, of the litigation between the State of New York, the New York State DEC, and the Commissioner of the New York State DEC, and CG Properties, LLC, Allen Green, and Hidden Valley Electronics.

47.     Mr. Andrulewich made his offer to purchase 1808 Vestal from Mr. Green after Mr. Green confirmed that, per his discussion and agreement with the DEC, the remediation action was settled and Mr. Andrulewich could purchase 1808 Vestal without the threat of future monetary expenses for cleanup.

48.     Upon information and belief, once 1808 Vestal was sold from CG Properties, LLC to Plaintiff, Bahama Mama, LLC, Plaintiff continued to abide by the Consent Decree as a "successor and assign."

49.     Upon information and belief, Plaintiffs have abided by the terms of the environmental easement and allowed reasonable access by Defendants regarding enforcement of the Consent Decree and Site Management Plan.

50.     Upon information and belief, Plaintiffs have fully cooperated with Defendants regarding the requirements of the Consent Decree, including accommodations for site inspections, testing, and responding to communications with the DEC.

51.     Upon information and belief, Plaintiffs have allowed Defendants to conduct regular tests at 1808 Vestal, all of which have been scheduled by Defendants and/or their employees or subcontractors.

52.     Upon information and belief, during these regular tests Defendants did not seek input or payment from Plaintiffs; Defendants performed in accordance with the Consent Decree which settled the claims for "past and future response costs" associated with remedial measures.

53.     Upon information and belief, all of the parties to the Consent Decree, and all of the parties who had an interest in final determination of the Consent Decree, understood the Consent Decree to apply to Plaintiffs as successors and assigns, including:

a.  CG Properties, LLC and Allen J. Green, by and through their attorney of record, Donald W. Stever, K&L Gates LLP, 599 Lexington Ave., New York, NY 10022;

b.  Hidden Valley Electronics, Inc., by and through its attorney of record, Kenneth S. Kamlet, Hinman, Howard & Kattell, LLP, 80 Exchange St., PO Box 5250, Binghamton, NY 12902;

c.  State of New York, The New York State Department of Environmental Conservation, and Joseph Martens, as Commissioner of the New York State Department of Environmental Conservation, by and through their attorneys of record, Dolores A. Tuohy, New York State Department of Environmental Conservation Office of General Counsel, 625 Broadway 14th Floor, Albany, NY 12233, Lisa S. Kwong, Assistant Attorney General, New York State Department of Law Environmental Protection Bureau, The Capitol, Albany, NY 12224, and Michael A. Mason, Remedial Bureau E, Section A, New York State Department of Environmental Conservation, Division of Environmental Remediation, 625 Broadway 12th Floor, Albany, NY 12233;

d.  M&T Bank (as lending institution), by and through its attorney of record, Jeffrey A. Loew, 450 Plaza Drive, Vestal, NY 13850; and

e.  Brian Andrulewich, American Fitness, Inc., and Bahama Mama, LLC, by and

through its attorney of record, Richard C. Lewis, Hinman, Howard & Kattell,

LLP, 80 Exchange St., PO Box 5250, Binghamton, NY 12902.

54.    On or about September, 2020, Mr. Andrulewich sought to sell 1808 Vestal.

55.    As part of the process of sale, Mr. Andrulewich sought confirmation from

Defendants that the Consent Decree did, in fact, apply to Plaintiffs as successors or assigns,

pursuant to the plain language of the Consent Decree.

56.    On September 1, 2020, Plaintiffs' counsel Richard C. Lewis sent a letter to

Margaret Sheen, senior attorney for the DEC's Office of General Counsel, addressing the DEC's

interpretation of the Consent Decree. *See Exhibit F*, September 1, 2020 Letter.

57.    Mr. Andrulewich sent follow-up emails to Ms. Sheen on September 9, 2020 and

September 28, 2020 regarding the DEC's interpretation of the Consent Decree. *See Exhibit G*,

September 9 and 28, 2020 Emails.

58.    In direct contradiction to the plain language of the Consent Decree, on October 13,

Ms. Sheen informed Mr. Andrulewich that the Consent Decree settled the State's claims against

"the Defendant" for the past and future costs. *See Exhibit H*, October 13, 2020 Email.

59.    Upon information and belief, Ms. Sheen and the DEC are interpreting "Defendant"

in this context as referring to CG Properties, Allen Green, and Hidden Valley Electronics as

Defendants to the Consent Decree.

60.    Upon information and belief, Ms. Sheen and the DEC's interpretation of

"Defendant" does not include Plaintiffs American Fitness Inc., Bahama Mama, LLC, and/or Brian

Andrulewich.

61.     Ms. Sheen further stated that "The Defendant and the State were the only settling parties to the Consent Decree." *See Ex. H.*

62.     Ms. Sheen also states that the Consent Decree "was a settlement . . . for $850,000.00" which covered "just a little over half of the past costs the State had spent" which Ms. Sheen stated was $1,583,499.87. *See Ex. H.*

63.     According to Ms. Sheen, "The Department has continued to implement the Sites OM&M, which costs approximately $30,000 annually." *See Ex. H.*

64.     In Ms. Sheen's opinion, "The Department believed it was in its best interest to recover a set amount from that Defendant while it could." *See Ex. H.*

65.     According to Ms. Sheen, "So, in a nutshell, the **cash payment settled** the [sic] **only the lawsuit that the State brought against the Defendant named in its complaint** (and named in the Consent Decree)." *See Ex. H* (emphasis added).

66.     Further, "Any other settlement involving any other owners/past owners would be via an agreement with the State." *See Ex. H.*

67.     Upon information and belief, Ms. Sheen claimed that "successors and assigns" pertained only to large corporations, not Defendants.

68.     This is in direct contradiction to not only the plain language of the Consent Decree, but also the parties' continued performance of the Consent Decree's terms and conditions since American Fitness, Inc.'s purchase of 1808 Vestal, and the parties unquestioned understanding of the Consent Decree for nearly a decade.

69.     Defendants have already agreed in the written Consent Decree that it applies not just to CG Properties, Allen Green, and Hidden Valley Electronics as named defendants to the prior litigation, but also their "successors and assigns."

11

70.    Plaintiffs American Fitness, Inc., Bahama Mama, LLC, and Brian Andrulewich are successors and assigns under the Consent Decree as purchasers and subsequent owners of 1808 Vestal.

71.    The Consent Decree applies the same to Plaintiffs as successors and assigns as it would to CG Properties, Allen Green, and Hidden Valley Electronics as named defendants to the Consent Decree and then-current property owners of 1808 Vestal.

72.    Defendants agreed to accept $850,000.00 in payment to settle all "**past and future response costs**" regarding remedial environmental measures required by the DEC. *See Ex. E* at 3 (emphasis added).

73.    Such "past and future response costs" would include the $1,583,499.87 in response costs mentioned by Ms. Sheen, as well as continued, future OM&M implementation costs of $30,000 annually.

74.    Upon information and belief, Defendants are attempting to reinterpret the plain language of the Consent Decree to exact more money from Plaintiffs.

75.    Based upon the four corners and plain language of the Consent Decree, the Consent Decree applies to successors and assigns.

76.    Based upon the four corners and plain language of the Consent Decree, Plaintiffs are successors and assigns of CG Properties, LLC and Allen Green.

77.    Based upon the four corners and plain language of the Consent Decree, all "past and future response costs" were settled when Defendants voluntarily agreed to accept an $850,000.00 settlement amount.

78.    Defendants' "buyer's remorse" is insufficient justification to reinterpret the unambiguous Consent Decree.

79.     If Defendants were concerned with additional response costs or continued OM&M costs, they should have accounted for the cost difference in the original Consent Decree.

80.     It is unlawful, baseless, and contrary to the plain language of the agreement for Defendants to rewrite the terms of the Consent Decree.

## AS AND FOR A FIRST CAUSE OF ACTION—DECLARATORY JUDGMENT

81.     Plaintiffs repeat and reallege paragraphs 1-80 as if fully set forth herein.

82.     Defendants voluntarily and willingly entered into the Consent Decree.

83.     The Consent Decree was entered into between Defendants and CG Properties and Allen Green as the owners of 1808 Vestal.

84.     The Consent Decree "is binding upon the State, and upon Defendants [CG Properties, Allen Green, and Hidden Valley Electronics] and their heirs, successors and assigns."

85.     According to the Second Circuit, "[t]he construction of a consent decree is an issue of law freely reviewable by this court." *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (citing *United States v. Board of Educ.*, 717 F.2d 378, 382 (7th Cir. 1983)).

86.     "Consent decrees are subject to continuing supervision and enforcement by the court" which also has "an affirmative duty to protect the integrity of its decree. This duty arises where the performance of one party threatens to frustrate the purpose of the decree." *Id.* (citing *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 557 (6th Cir. 1982), *rev'd* on other grounds sub nom., *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S. Ct. 2576, 81 L. Ed. 2d 483 (1984) (footnote omitted) (discussing cases)).

87.     "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id.* (citing *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); see also *Stotts*, 467 U.S. at 574-75).

13

88.     Plaintiffs seek a declaratory judgment from this Court stating that the Consent Decree's language of "heirs, successors and assigns" would apply to Plaintiffs as successors and purchasers of 1808 Vestal from CG Properties and Allen Green, and the Consent Decree would not solely apply to CG Properties and Allen Green as named parties to the Consent Decree.

89.     Therefore, the Consent Decree applies not only to CG Properties, Allen Green, and Hidden Valley Electronics as named parties to the first litigation and Consent Decree, but also to Plaintiffs American Fitness, Inc., Bahama Mama, LLC, and Brian Andrulewich as heirs, successors and assigns, due to their purchase of 1808 Vestal.

## AS AND FOR A SECOND CAUSE OF ACTION—DECLARATORY JUDGMENT

90.     Plaintiffs repeat and reallege paragraphs 1-89 as if fully set forth herein.

91.     Defendants voluntarily and willingly entered into the Consent Decree.

92.     The Consent Decree was entered into between Defendants and CG Properties and Allen Green as the owners of 1808 Vestal.

93.     The Consent Decree "is binding upon the State, and upon Defendants [CG Properties, Allen Green, and Hidden Valley Electronics] and their heirs, successors and assigns."

94.     "By entering into this Consent Decree, the objectives of the Parties is (i) for Defendants [CG Properties, Allen Green, and Hidden Valley Electronics] to make a cash payment to the State in settlement of the claims for past and future response costs as set forth in the Amended Complaint."

95.     "It is recognized that a consent decree represents a compromise between parties who have waived their right to litigation and, in the interest of avoiding the risk and expense of suit, have "give[n] up something they might have won had they proceeded with the litigation." *Berger*, 771 F.2d at 1568 (quoting *Armour & Co.*, 402 U.S. at 681-82).

96.     "[T]he explicit language of the decree is given great weight . . . [and] deference is to be paid to the plain meaning of the language of a decree and the normal usage of the terms selected." *Id.* (citing *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892-93 (9th Cir. 1982); *United States v. Atlantic Refining Co.*, 360 U.S. 19, 22-23 (1959)).

97.     Plaintiffs seek a declaratory judgment that payment of $850,000.00 by 1808 Vestal's prior owner should be considered "cash payment to the State in settlement of the claims for past and future response costs" and would apply to any additional past or future costs claimed by Ms. Sheen and the DEC regarding $1,583,499.87 in response costs or $30,000.00 in annual OM&M costs.

98.     Therefore, payment of $850,000.00 is the final, complete payment of all past and future response costs associated with 1808 Vestal, and Defendants cannot now seek additional "past and future response costs" related to the Consent Decree from Plaintiffs, in accordance with the plain language of the Consent Decree.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request a jury trial on all issues; and hereby demand declaratory judgment to be determined at trial; plus the costs and attorneys' fees incurred in bringing this action; and for any other and further relief this court deems just and proper.

Dated:   January **26**, 2023
        Binghamton, New York

Richard C. Lewis, Esq. (Bar No. 301548)
Richard H. Miller III, Esq. (Bar No. 5870126)
HINMAN, HOWARD & KATTELL, LLP
Attorneys for Plaintiffs
80 Exchange Street
P.O. Box 5250
Binghamton, NY  13902-5250
Telephone: 607-723-5341
rlewis@hhk.com
rmiller@hhk.com